IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HOLLIE MAE BARTON,**

        **Plaintiff,**

  v.                                      Civil Action 2:20-cv-2182
                                              Judge James L. Graham
                                              Magistrate Judge Jolson

**COMMISIONER OF
SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Hollie Mae Brown, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on May 22, 2017, alleging that she became disabled beginning June 1, 2016. (Tr. 222–34). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on April 2, 2019, before issuing a decision denying Plaintiff's applications on April 24, 2019. (Tr. 33–59, 12–32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–5).

Plaintiff filed this action on April 30, 2020 (Doc. 1), and the Commissioner filed the administrative record on October 13, 2020 (Doc. 12). Shortly thereafter, Plaintiff filed her

Statement of Errors (Doc. 13), and the Commissioner filed his Opposition (Doc. 15). As Plaintiff did not file a reply, this matter is now ripe for review.

### A. Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony:

> The claimant testified to the following: she has difficulty bending, lifting, or sitting or standing too long. Lifting her head to look up or down for more than two seconds or moving her head fast side to side aggravates her neck pain. She has daily headaches caused by her neck impairment. She stays in her bedroom most of the day and sometimes must lie down in the dark and quiet. The claimant has vision problems: she holds reading material approximately one foot from her eyes to read and she only drives in good weather so there are no factors that affect her ability to see. She only drives to places she has been to before. The claimant performs household chores, but she must take breaks.

(Tr. 22).

### B. Relevant Medical History

Because the Undersigned's analysis concerns only Plaintiff's physical impairments, the Undersigned limits her discussion of the record to the same. The ALJ summarized the relevant medical evidence:

> Regarding the claimant's lower back pain, it has responded well to treatment. X-rays obtained on May 12, 2016, showed an 11degree levoconvex scoliotic curvature from T8 through L1 and a 10-degree extroconvex scoliotic curvature from L2 through L5 (2F p 27). Magnetic resonance imaging (MRI) of the lumbar spine obtained on May 7, 2016, showed mild to moderate discogenic disease and degenerative joint disease at the lumbosacral junction with left greater than right foraminal stenosis and mild canal stenosis (2F pp 29-30). After failing conservative treatment (7F p 6), Charles L. Levy, M.D., performed an L4-S1 spinal decompression and fusion with hardware placement on January 31, 2017 (2F pp 8-11). Postoperative x-rays showed that the hardware was intact and the claimant had stable mild curvature of the lumbar spine convex to the right (2F p 7; 7F p 15). Six weeks after surgery, the claimant reported improvement in her back pain and resolution of leg pain (7F p 15). Dr. Levy observed that the claimant ambulated normally; she had full strength in the lower extremities, normal reflexes, and a negative straight leg test (7F p 16). Sensation was full to all modalities and he concluded that the claimant's physical examination and films were concordant with "an optimal surgical result" (7F p 16). Subsequent examinations of the lumbar spine were normal, including range of motion (7F pp 20, 36).

Regarding the claimant's complaints of neck pain, the claimant did not complain about neck pain until October 2017 and even after that, the physical examinations do not reflect limitations of the extent alleged. X-rays of the cervical spine obtained on May 12, 2016, showed mild to moderate cervical spondylosis from C3 through C6 without instability (2F p 28). However, on July 10, 2017, in preparation for eye surgery, she told providers at The Ohio State University Wexner Medical Center that she did not have limited movement of the neck (9F p 18). Likewise, in June 28, 2017, Dr. Levy noted that the claimant's neck was asymptomatic (7F p 20).

The claimant reported increased neck pain in October 2017 (7F p 35). She reported headaches and pain that radiated into her bilateral upper extremities with numbness and tingling in her hands and elbows (7F p 35). Physical examinations showed decreased range of motion, tenderness, and some spasm, but Spurling's and Tinel's signs were usually negative, sensation was intact, and she had normal strength in the upper extremities (7F p 36; 8F pp 6, 11, 16). Dr. Levy ordered an updated MRI of the cervical spine and electromyography (EMG). The MRI showed only some mild disc bulging and some minimal foraminal stenosis; and the EMG was unremarkable (7F p 41; 13F p 8). Dr. Levy recommended conservative treatment and ordered physical therapy (7F pp 42-43).

The claimant reported some relief with physical therapy, injections, and a muscle relaxer (8F pp 6, 10, 15). On July 2, 2018, Dr. Levy administered trigger point injections in the occipital area to address the claimant's complaint of daily headaches (8F p 16), but there are no treatment notes after that date to assess the efficacy of the injections. It appears the claimant did not return to Dr. Levy or any other care provider for treatment of her headaches after that date, although she endorsed headaches during appointments with her ophthalmologists (9F p 191; 14F p 3).

Regarding the claimant's vision problems, she was diagnosed with bilateral aphakia and a history of epikeratoplasty, or congenial cataracts (3F p 4; Doctor Rivero's testimony). The cataracts were removed but the claimant had residual corneal scarring (3F; 6F p 2). The claimant reported that she could not tolerate contact lenses and her glasses made her dizzy so she only used them to read. Nevertheless, without correction, she retained visual acuity of 20/70 in the left eye and 20/50 in the right eye (3F p 6), and she was able to pass a driver's eye exam at the College of Optometry (3F p 8). On July 24, 2017, the claimant reported that she drove herself places (6F p. 3).

She underwent a corneal transplant on August 29, 2017 (9F pp 24, 194–196), and had an epi graft rejection on April 5, 2018 (9F pp 61, 171), She complained about mild pain and photophobia after the surgery, but this improved over time (9F pp 45, 57, 64, 152). By June 2018, she had uncorrected visual acuity of 20/50 +2 in the right eye and 20/60 -1 in the left eye (9F p 183). With correction, in July 2018, the claimant had 20/40 visual acuity in he right eye and 20/50 in the left eye (9F p.

3

187). She reported doing well with glasses after the corneal transplant (9F p 190; see also 10F p 3; 14F p 4).

(Tr. 22–23).

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2021, and that she had not engaged in substantial gainful employment since June 1, 2016, the alleged date of onset. (Tr. 17). The ALJ also determined that Plaintiff suffered from the following severe impairments: spinal dysfunction, visual inefficiency, anxiety disorder, and affective disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 18).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 4040.1567(b) and 416.967(b) except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, she can sit for six hours and stand and/or walk for six hours. She can never perform overhead reaching. The claimant can frequently kneel, crouch, and climb ramps and stairs; she can occasionally crawl and stoop; she can never climb ladders, ropes, or scaffolds. Work should not require more than occasional reading and she cannot perform tasks that require clear vision at more than three feet or that require depth perception. The claimant should have no exposure to unprotected heights, moving mechanical parts, or dangerous machinery. She cannot operate a moving vehicle. She should have no exposure to extreme cold, vibration, or more than moderate noise. Interaction with co-workers, supervisors, and the public is limited to frequent. She is expected to be off task 10 percent of the workday.

(Tr. 21). When assessing Plaintiff's RFC, the ALJ also analyzed the medical opinion from Maria V. Rivero, M.D., an impartial medical expert who testified at the April 2, 2019, hearing. The ALJ found that Dr. Rivero's opinion was not entirely persuasive. (Tr. 24). Specifically, the ALJ found that Dr. Rivero's opinion that Plaintiff was limited to occasional repetitive movement of the neck was not supported by or consistent with the record evidence. (*Id.*). The ALJ also found

4

unpersuasive the state agency reviewers' finding that Plaintiff had visual limitations that precluded reading fine print, working around hazards, and commercial driving. (*Id.*). The ALJ explained that the state agency reviewers did not have the opportunity to review the full record which included documents reflecting that Plaintiff's vision and ability to wear glasses had improved after her cornea surgery. (*Id.*)

The ALJ determined that Plaintiff did not have past relevant work. (Tr. 25). Relying on the VE's testimony, the ALJ further determined that given her age, education, work experience and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy. (Tr. 26). Consequently, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 1, 2016, through the decision date, April 24, 2019. (Tr. 27).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x. 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of H.H.S.*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence,

it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III. DISCUSSION

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ substituted his own lay opinion for the that of Dr. Rivero, who opined that Plaintiff was limited to occasional repetitive movement of the neck. (Doc. 13 at 6). The Undersigned finds that this allegation is without merit.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a case file. *Id*. Because Plaintiff's application was filed after March 27, 2017, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Those regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability

6

program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors[.]" §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id*.

Plaintiff contends that the ALJ did not give a reasonable explanation when he determined that Dr. Rivero's opinion was unpersuasive. (Doc.13 at 6.) The Undersigned disagrees. The ALJ summarized Dr. Rivero's testimony:

> Maria V. Rivero, M.D., an impartial medical expert, testified at the hearing and opined that the claimant could perform light exertion, but she could not perform any overhead work. She could frequently reach overhead and she could occasionally perform repetitive motion with the neck. She advised that due to vision problems, the claimant should not be operating machinery, driving commercially, or climbing ladders, ropes, or scaffolds.

(Tr. 23–24). The ALJ then explained that he did not find Dr. Rivero's opinion that Plaintiff was limited to occasional repetitive neck movement persuasive because it was not supported by or consistent with the record evidence. The ALJ wrote:

> Dr. Rivero's opinion is not entirely persuasive. While of the limitations she testified to are supported by the physical examinations of record, I do not find support for only occasional repetitive movement of the neck. The claimant did not complain

7

>about neck pain until more than a year after the alleged onset date (7F p 35), and then, she experienced notable relief with medication and injections (8F pp 6, 10, 15). An EMG was negative and physical examinations showed that the claimant had normal sensation and strength in the upper extremities (7F p 36; 8F pp 6, 11, 16). Dr. Levy documented limited range of motion (Id.), but the most recent physical examination indicates the claimant had normal range of motion (BF p 4). Thus, I do not find that the objective evidence supports only occasional neck movement. Rather, I limited the claimant to light exertion with no overhead reaching to account for her cervical spine impairment. These limitations are consistent with the diagnostic studies, the physical examinations, and the claimant's response to treatment.

(Tr. 24). The ALJ explicitly stated that he found that Dr. Rivero's opinion was not supported by the record evidence and then described the evidence that led him to that conclusion. The ALJ also stated that the limitations included in his RFC determination were consistent with diagnostic studies, physical examinations, and Plaintiff's response to treatment, and thus implied that Dr. Rivero's more restricted limitations were not. In this way, the ALJ explained how the supportability and consistency factors were considered. That is all that the regulations require. 20 C.F.R. § 416.920c(b)(2).

The Undersigned further finds that the ALJ's supportability and consistency analyses are supported by substantial evidence. First, the ALJ explained that Plaintiff did not complain about neck pain until more than a year after the alleged onset date of June 21, 2016. (Tr. 24). The record indeed reflects that examinations from 2014 through 2016 revealed that Plaintiff's neck had a normal appearance (Tr. 350, 345, 333, 734, 319, 743), a full range of motion on May 12, 2016 (Tr. 734), and no limited range of motion on October 20, 2016 (Tr. 392). Although Plaintiff reported cervical numbness and tingling on March 1, 2017 (Tr. 449), on June 28, 2017, her treatment provider wrote that her neck was not a concern as it appeared to be asymptomatic and that there were no real indications for surgical appraisal. (Tr. 464). On July 10, 2017, Plaintiff told her eyecare provider that she had no history of neck pain. (Tr. 422). All in all, it appears that Plaintiff

did not report neck pain until October 1, 2017, at which time an examination revealed muscular tenderness, pain with range of motion, and decreased flexion to the left and right but no spinal tenderness. (Tr. 470).

The ALJ also noted that other testing at that time revealed, however, normal results. (Tr. 24). And the record reflects that an EMG on November 9, 2017, was within normal limits and all examined muscles showed no evidence of instability. (Tr. 761). In addition, the record reflects that although Plaintiff had tenderness and pain or decreased cervical range of motion (Tr. 476, 483, 487), she also had normal sensation and strength in her upper extremities (Tr. 483, 488, 493). The ALJ further noted that Plaintiff experienced notable relief from treatment. (Tr. 24). The treatment records indicate that Plaintiff reported that she was happy with the results of physical therapy on February 2, 2018 (Tr. 483), and that she reported some relief with trigger point injections on April 16, 2018 (Tr. 488). On July 2, 2018, Plaintiff reported that muscle relaxers and trigger point injections really helped with her pain, she denied numbness and weakness, and indicated that her biggest complaint at that time was headaches. (Tr. 492, 493). In addition, and as the ALJ explained, an examination on September 16, 2018, revealed that Plaintiff had normal range of motion in her neck. (Tr. 757). For these reasons, the Undersigned finds that the ALJ's supportability and consistency analysis was supported by substantial evidence.

Plaintiff also contends that the ALJ erred because he did not point to an opinion from another medical authority when he found that Dr. Rivero's opinion was not persuasive. (Doc. 13 at 6). Yet, there is nothing in the governing regulations indicating that an RFC determination is substantially supported only if it is consistent with a medical opinion. Indeed, the Sixth Circuit Court of Appeals has explicitly rejected the argument that an RFC determination cannot be supported by substantial evidence unless it is consistent with a medical opinion. The Circuit has

explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July, 2, 1996). "[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 Fed. App'x. at 728. *See also Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x. 435, 442–43 (6th Cir. 2017) (rejecting argument that 'the ALJ's [residual functional capacity] lacks substantial support because no physician opined that [the claimant] was capable of light work"). Plaintiff's assertion, therefore, lacks merit.

### III. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's disability determination be **AFFIRMED**.

### IV. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  March 25, 2021                             /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE